RECEIVED

JUN 0 4 2015

BY MAIL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

**CLAUDE M. KOONTZ,**

**PLAINTIFF**

**v.**                                                    **Case No.:** _____

**Mercy Hospital;**
**Jeffrey A. Johnston, President;**
**Kathy (unknown defendant 3);**
**Sharon (unknown defendant 4);**
**Laura (unknown defendant 5);**
**Frank (unknown defendant 6);**
**Keith (unknown defendant 7);**
**Abhilasha Jarori, M.D.,**
**et. al.**

**DEFENDANTS.**

## CIVIL RIGHTS COMPLAINT

COMES NOW Plaintiff Claude Koontz, pro se, informa pauperis, in accordance with Fed. R. Civ. Procedure, United States Code, Missouri Law, with his Civil Rights Complaint alleging violations of his Civil Rights, as well as the Hospital Insurance Portability Act (hereinafter HIPPA 1996), and the American with Disabilities Act. Moreover, Plaintiff specifically alleges violations of his Rights under the Fifth, Sixth, Eleventh and Fourteenth Amendments to the U.S. Constitution.

Jurisdiction and Venue

This Honorable Court has jurisdiction and venue over the Instant Cause before it since all parties either reside within the above stated county or conduct and/or our employed within said county. Moreover, all parties are citizens of the State of Missouri and of the United States of America.

1

Parties

1.   Plaintiff Claude M. Koontz, pro se, at all times relevant to this complaint, the Plaintiff in tn.s matter and is a citizen of St. Louis County Missouri, the State of Missouri and a citizen of the United States of America (hereinafter referred to as the Plaintiff). He resides at 506 Sarah Lane, Apartment E., Creve Coeur, Missouri 63141.

2.   Defendant Mercy Medical Center/Hospital is, at all times relevant to this complaint is being sued in its Official Capacity, a health care business licensed to do business within the State of Missouri, County of St. Louis, located at 615 South New Ballas Road, St. Louis, MO.

3.   Defendant Jeffrey A Johnston is being sued in his Official and Individual capacity as the President of Mercy Medical Center in St. Louis, (hereinafter referred to as Defendant Johnston) is and was, at all times relevant to this complaint, the President of Mercy Medical Center and is Respondent Superior to other potential named and unnamed defendants to be named in the Amended Petition and is employed within the State of Missouri at the Mercy facility located at 615 South New Ballas Road, St. Louis, MO.

4.   Kathy, unknown defendant 3 (hereinafter identified as Defendant 3) is being sued in her Official and Individual capacities, defendant is an employee of Defendant Mercy Hospital Center located at 615 South New Ballas Road, St. Louis, MO.

5.   Sharon, unknown defendant 4 (hereinafter identified as Defendant 4) is being sued in her Official and Individual capacities, defendant is an employee of Defendant Mercy Hospital Center located at 615 South New Ballas Road, St. Louis, MO.

6.   Laura, unknown defendant 5 (hereinafter identified as Defendant 5) is being sued in her Official and Individual capacities, defendant is an employee of Defendant Mercy Hospital Center located at 615 South New Ballas Road, St. Louis, MO.

7.   Frank, unknown defendant 6 (hereinafter identified as Defendant 6) is being sued in his Official and Individual capacities, defendant is an employee of Defendant Mercy Hospital Center located at 615 South New Ballas Road, St. Louis, MO.

8.   Keith, unknown defendant 7 (hereinafter identified as Defendant 7) is being sued in his Official and Individual capacities, defendant is an employee of Defendant Mercy Hospital Center located at 615 South New Ballas Road, St. Louis, MO.

2

9.    Abhilasha Jarori, M.D.,(hereinafter identified as Defendant Jarori) is being sued in her Official and Individual capacities as a physician and Hospitalist as an employee of Defendant Mercy Hospital Center located at 615 South New Ballas Road, St. Louis, MO.

Statement of Facts

10.    On or about April 17, 2015, Plaintiff did present himself voluntarily to the Emergency Department at Mercy Hospital located at 615 South New Ballas Rd., St. Louis, MO 63141 for psychiatric evaluation. Plaintiff has lengthy history of Bi-Polar Disorder, PTSD, Severe Anxiety, and moderate agoraphobia.

11.    Plaintiff presented with the chief complaint of manic behavior and issues with medications.

12.    Upon being interviewed by the psychiatric intake coordinator and given a physical exam by an ER physician it was determined that he was suffering from hypertension, hypothyroidism and abdominal pain. Pain medication was administered, however, there was no need for sedation or the administration of antipsychotic medications.

13.    Plaintiff was admitted after midnight to the onsite Behavioral Health Facility.

14.    The early hours of April 18th were mired in staff confusion. There was a failure to follow ER physician's pain management. The Plaintiff's regularly scheduled medications were not offered until late in the day leaving Plaintiff in a state of panic and confusion as well as suffering from extremely high blood pressure and dizziness.

15.    Plaintiff constantly complained to all staff members about his mental and physical health and was told he had to wait for his psychiatrist to issue orders. It took nearly 18 hours for meds to be given and even then he was still sick.

16.    During the afternoon of April 18th, 2015, Plaintiff began to feel worse with dizziness and nausea, nearly passing out. His concerns where ignored by all staff. The Plaintiff became scared and agitated and used the house phone to summon the Creve Coure Fire Department to escort him to ER. Call number 15-004-0089 with time of call at 2:32pm.

17.    Upon their arrival, the Paramedics demanded to see the patient/Plaintiff. They discovered the Plaintiff had been ushered into the secluded office of his attending Psychiatrist, Peter Xhang, M.D. They were not allowed to examine or even speak to the Plaintiff.

3

18.    After the above-described incident the Plaintiff was only provided the barest dosage of his regular medication and was denied the same freedom to access the house phones as other patients in clear violation of due process and equal protection.

19.    Plaintiff requested a formal grievance form and was told there was none available and instead given a plain piece of paper and short unsharpened pencil. After filing out the information as to the best of his knowledge and adding a hand written Writ of Habeas Corpus he placed information into a plain manila envelope and secreted off the Unit to House Legal Counsel for Mercy Hospital. No action was taken.

20.    On or about April 19th, 2015, Plaintiff again complained of medication dosages being too low. His blood pressure was in extreme fluctuation and Plaintiff was nauseated and dizzy. At some point a call for medications was sent out and the Plaintiff can only recall being present; however, Plaintiff suffer an episode of syncope (fainted). He awoke in state of confusion and was seated on the floor with bystanders and staff attempting to render aid. Yet again, Plaintiff was not escorted to the Emergency Department for a more thorough exam that may have identified cardiac or neurological involvement.

21.    Plaintiff later that day (feeling stable) asked to use the restroom and was allowed to move without assistance. Once again dizziness and nausea overwhelmed Plaintiff, this time out of sight of personnel and he fainted, in the restroom. He immediately pulled the "HELP" indicator on the wall.

22.    Plaintiff would later have the validity of this event questioned, yet still denied adequate evaluation by Emergency Department Staff.

23.    The events as follows are factual yet the timeline is difficult since Plaintiff was forcibly medicated by staff members who knew or should have known he suffered from an anaphylactic reaction to the medication he was forcibly given, Haldol Decaoate.

    a. On or about the evening of the 19th of April, 2015, Plaintiff was suffering from severe anxiety and mania (a condition readily controlled by his normal dosage of his regularly scheduled medications).

    b. Another patient was also suffering from self-described heroin withdraws and in desperate shape. Plaintiff approached the nursing station on three occasions—once on behave of the another patient---only to be rebuffed and insulted by Defendant 7 (Keith) a night shift Register Nurse.

4

c. Without provocation Defendant 7, with Plaintiff in close proximity, placed a call for security staff to One North (Plaintiff's Unit). Purely out of curiosity Plaintiff inquire as to what the issue was, Defendant 7 retorted the Plaintiff was the issue and would be sedated.

d. Initially Plaintiff was concerned about the need for security staff, then concerned with the medication to be given. When he was told that the medication to be administered was Haldol the Plaintiff immediately protested and informed the Defendant and witnesses that he was allergic to medication and that it was well noted in all his medical records.

e. Once obvious that there were six security officers---all of whom refused to provide full names---and several staff members prepared to undertake whatever means necessary to sedate the Plaintiff he merely removed his shirt as ordered and took the injection.

24.    Within twenty minutes of the injection the Plaintiff was aware of profuse sweating and a physical need to take deeper breaths. There was also a mucus buildup in the Plaintiff's throat. When he approached a number of the defendants and complained he was threatened with being physically restrained in the "Quiet Room."

25.    The Plaintiff fearing retaliation refrained from any further complaints; however, between bouts of unconsciousness and semi lucidity the Plaintiff washed his face with cold water, gargled and tried to remain alert throughout the night.

26.    On or about the 20th, April 2015, Plaintiff awoke to find a ***NOTICE OF RIGHTS OF INVOLUNTARY PATIENT*** on his chest. Since he was a voluntary patient who had not made a request to leave against medical advice Plaintiff was confused about this new event.

27.    Approaching the nursing staff Plaintiff made every attempt to maintain a positive upbeat attitude yet when he asked the nursing staff (defendants 3, 4, 5) to use the phone it was pulled further away and he was told he could not make nor receive phone calls. Plaintiff was informed he was not to have any contact with the outside world, clearly in violation of 1st, 5th, 6th, 8th 11th and 14th Amendments of the Constitution.

28.    Plaintiff was deprived of his Due Process Rights and his Right to Counsel inhibited (actions all of which were punitive in nature) in an attempt to dissuade him from pursuing any grievances. Nothing in the actions of defendants' was designed to be therapeutic; rather the actions of the defendants were designed to be punitive in nature without the benefits afforded by the U.S. Constitution.

29.    When Plaintiff was finally allowed to call his attorney; however provided with no privacy and every word could be over heard by all nearby defendants. Plaintiff was informed by his attorney that his appointment was only applicable if the defendants continued to confine the Plaintiff after 21 days. Plaintiff then requested permission to contact his live-in girlfriend to have her contact outside counsel. His request was denied. Plaintiff then requested an actual grievance form and he was denied.

30.    During the above-described period, the Plaintiff's blood pressure stayed at dangerously high levels and his distress was apparent to staff and patients alike. Plaintiff repeatedly asked the staff to review his medical records, all of which were readily available, including the fact the Plaintiff suffers from *Atrial Fibrillation* and *Hypertension*. Plaintiff's duress was further heightened by the fact that he had been advised in earlier consultations with Mercy Medical Center's own physicians that he was at a higher risk of having a stroke than the general public. These repeated requests to be taken to the ER were dismissed or outright denied.

30.    On or about the night of the 20th, the Plaintiff was neither manic nor verbalizing aggression to any staff or patients, yet, continued to request both redress of his grievances and medical attention. Once again Defendant 7 called security—which there was no need—and sedated with the same medication which was listed in his medical records and a red wristband affixed to his right arm by Mercy Medical Center's own staff.

31.    The Plaintiff began to sweat profusely, had a severe headache, difficult clearing his throat and felt heart palpitations throughout the night leading Plaintiff to evermore agitation.

32.    On or about the 21st, after a short meeting with his staff psychiatrist the Plaintiff was discharged with only a few day's supply of a tranquilizer, no bi polar medication and no clear instructions on follow up.

33.    Following his discharge the Plaintiff lodged complaints with Mercy Legal Advisor Jenny Bentley, Patient Relations Coordinator Deborah Allison and the upper management. They found no fault in any actions taken by their staff.

RELIEF

WHEREFORE the Plaintiff respectfully requests this Honorable Court to impose relief as follows:

a.  Immediate Injunctive Order requiring all patients be given adequate access to their 6th Amendment Rights to Access the Courts and/or have access to law materials, including books, Reporters, Digests, ALR, Shepard's Citations and all other materials any person under confinement and in the Care and Custody of representatives of the State of Missouri would otherwise have access.

b.  Compensatory Damages in the amount of $80,000.00 USD for the deprivation of freedom and false imprisonment.

c.  Punitive Damages in the amount of $500,000.00 USD for pain, suffering and the depravation of Plaintiff's Rights under the United States Constitution.

d.  Other such relief this Honorable Court deems necessary in the interests of Justice

Respectfully Submitted

Claude Milton Koontz Jr.
506 Sarah Lane
Apt. E
St. Louis, MO 63141
314-910-9741